## Court of Appeals.

*July,* 1882.

## Supreme Court—General Term—First Department.

*May,* 1882.

## PEOPLE *v.* TWEED.

LARCENY BY PRETENDED LOTTERY.—SUCCESSIVE ACTS—WHEN
DEEMED CONTINUOUS.

Where the complainant is induced by the accused and his confederates,
in pursuance of a conspiracy and with intent thereby to deprive him
of his money, to deposit it upon the drawing of a pretended art lot-
tery, by means of which trick and device they deprive him of his
money and convert it to their own use, the transaction constitutes
larceny.

Where the evidence shows that the complainant was, in pursuance of
such a conspiracy, induced to deposit a sum of money less than
twenty-five dollars in amount, upon a table from which it was taken
up by the accused and moved to another place thereon, and three
minutes afterwards, upon the drawing by the complainant of a cer-
tain card, he was induced to make another deposit of the same
amount, which was taken by the accused and placed upon the table
on the first deposit, and immediately thereafter the entire sum was
taken by the accused and delivered to one of his confederates, by
whom it was appropriated and detained from the complainant, the
question whether the first taking was with felonious intent should
be left to the jury, and a finding that the whole transaction consti-
tuted one offense of grand larceny, will be upheld.

The defendant and appellant was indicted jointly with David
B. Martin and George Wilson for the crime of grand larceny.
He was tried separately in the Court of General Sessions of
New York, and convicted, from which judgment, and from an
order denying a motion for a new trial upon the minutes, this
appeal is taken.

The appellant, with two or more confederates, on October 20,
1881, conspired together to get the complaining witness, who
was a stranger in the city, into a place in Grand street, near

South Fifth avenue, for the purpose of committing larceny, and on the evening of that day, Martin, one of the confederates, called at the complainant's hotel with a carriage, took the complainant into the carriage, and under the pretense of taking him to Booth's Theater, where he desired to go, and supposed he was going, took him to the place in Grand street. While they were on the way, as the complainant supposed, to Booth's Theater, Martin, the confederate, told the complainant that he, Martin, had won two valuable pictures in an art union lottery, he wanted to see about insurance on them. On arriving at the and place in Grand street, Martin induced the complainant to enter with him under the pretense of seeing about insurance on them. When they got inside, the complainant met the appellant, Tweed, who appeared to have charge of the place. While there, the appellant and his confederates induced the complainant to deposit five English sovereigns on a table for a pretended drawing in a lottery. The pretended drawing took place, and it was represented that the complainant was successful. The money remained on the table in sight all the time ; but it was taken up and removed by the appellant from the place where it was deposited, to another place on the table upon what appeared to be bank-notes. The appellant then told the complainant to deposit $25. more upon another pretended drawing, and after drawing certain cards, the complainant again deposited two English sovereigns and six English half-sovereigns, which were put by the appellant in the same place with the other five sovereigns on the table, making one lot of seven sovereigns and six half-sovereigns. The deposits were made upon the appellant's promise to the complainant that he should have the money back in five minutes. Only three minutes elapsed between the first and second deposits. Neither deposit was lost or pretended to be lost in the drawing. After the second deposit had been made, all the money was taken together in one lot by the appellant, Tweed, and delivered to one of his confederates and appropriated and detained from complainant. It was admitted upon the trial that a sovereign was worth $4.88.

At the close of the testimony upon the part of the prosecution, counsel for prisoner asked the court to advise the jury that

at most there could only be a conviction of petit larceny upon the facts, which was refused and exception taken.

After the verdict, and before judgment was pronounced upon the appellant, counsel moved for a new trial on the ground that the verdict was against the law and the evidence, which was denied.

*William F. Kintzing*, for appellant.—The trial judge erred in submitting the case to the jury as one where upon the facts there could be a conviction of grand larceny.

To constitute the offense of larceny there must be a taking of the goods from the power and control of the owner. A temporary possession, however, by the thief, though but for a moment, is sufficient. Harrison *v.* People, 50 *N. Y.* 518, and authorities there collated.

There was sufficient time elapsing, viz., three minutes, between the two receptions of the gold, to make a complete asportation as to each—hence, two separate and distinct acts, larcenous takings.

When each of the amounts of gold was lifted from the table and placed under the power and control of appellant, it was done in the furtherance of a conspiracy, and when the coin came to the hands and possession of the appellant the amount each time in value did not exceed $25; and further, there existed each time the criminal intent. Loomis *v.* People, 67 *N. Y.* 322.

There was no evidence in the case going to show that the conspirators knew how much money the complainant had in his pocket. The intent must have been, at the time, to steal only that which was in view.

The time elapsing between the taking of the separate amounts of money is important, as well as the fact of the drawing of a card, in considering the question as to whether the act or acts of the appellant were "continuous" or "separate and distinct," thereby making his act one of grand or petit larceny.

*John McKeon*, district attorney, for the People, respondent. —The appellant and his confederates conspired fraudulently and feloniously to procure money of the prosecutor, and by means of trick and device succeeded in converting it to their own use.

This was larceny. Smith *v.* People, 53 *N. Y.* 111; Loomis *v.* People, 67 *Id.* 322.

The prosecutor did not at any time part with the possession or ownership of his money. Loomis *v.* People, *supra.*

It will be seen from the testimony that it was the plan of the appellant and his confederates to get the prosecutor to place upon the table all the money he had, and then to steal it. Inducing the prosecutor to place his money upon the table in different deposits did not constitute different acts; but only a series of preliminary and successive steps to the consummating of the crime. Boland *v.* People, 25 *Hun,* 423. All the money lay upon the table in the sight and legal possession of the prosecutor, and the crime was consummated only when the appellant removed all the money from the table and converted it.

The case was properly submitted to the jury upon the point whether the appellant, in taking up and putting down the first amount, intended to steal it, or whether the intent to steal was not restricted to the final taking when the whole amount of money was taken by the appellant and passed over to a confederate.

The following opinion was delivered by the General Term:

DANIELS, J.—It is conceded by the learned counsel presenting the case on behalf of the appellant that he could properly have been convicted of the crime of petit larceny, and it is claimed by him that the verdict should not have been permitted to exceed the bounds of that offense.

The offense itself was committed by depriving the complaining witness of certain English gold coin owned by him, with a felonious intent on the part of the defendant and certain confederates acting in concert with him. One half the amount which was lost, and not exceeding the amount of twenty-five dollars, was staked upon a pretended drawing in what was represented to be an art lottery. The complaining witness had been induced to participate in the drawing by the defendant and his confederates with the intent, by means of a trick and device, to deprive him of his money. This constituted the crime of larceny within the cases of Smith *v.* People, 53 *N. Y.*

111, and Loomis v. People, 67 *Id.*, 322. After this first amount had been deposited upon the table the defendant took it up and within three minutes placed it upon what appeared to be bank-notes. There it was permitted to remain until another deposit of the same amount was made by the witness, and, after that deposit was made and the second drawing took place, all the money was taken together in one lot and delivered by the prisoner to one of the confederates, by whom it was appropriated and detained from the witness. The final taking included a larger amount than has been required by the statute to create the crime of grand larceny. But that offence was not committed by what was shown to have taken place, if the taking of the first amount by the defendant created the crime of larceny.

The case was fairly submitted to the jury upon the point whether the defendant, in taking up and putting down the first amount, intended to steal it, or whether the intent to steal was not restricted to the final taking when the whole amount of money was taken by the defendant and passed over to a confederate.

Why the defendant first took up the coin which the witness had placed upon the table does not otherwise appear than by the act of simply taking it up from the place where it had been deposited upon the table, and then placing it upon what appeared to be bank-notes. No other act was performed by him from which it could be inferred that he, at that time, by what he did, intended to steal this particular sum of money. The act itself surely did not deprive the witness of his property. It was as much within his control when it was placed upon the notes as it previously had been when it stood upon the table. And as the defendant did nothing more with the money at that time than to take it from one place on the table and deposit it upon the other, it may reasonably be presumed that this was all that he intended at the time when he took up the coin. All that he did was to transfer the coin from one place to another place, upon the table, and in the absence of any other circumstance tending to warrant the conclusion that by that act he intended to appropriate the money feloniously to his own use, the presumption arising would be that such was not his intention, but that he was actuated by the mere purpose of changing the loca-

tion of the money upon the table. This was the effect of what he did, and persons may ordinarily be presumed to intend only what by their acts they at the time accomplish. People *v.* Herrick, 13 *Wend.* 87, 91; Van Pelt *v.* McGraw, 4 *Coms.* 110, 114.

This principle is directly applicable to this case, and the jury were warranted by it in inferring that the defendant at the time when he changed the position of the coin did not intend to steal it, but that the intent to steal was only carried into effect when he took up the entire amount of the coin exceeding the sum of twenty-five dollars and transferred it to his confederate. And that rendered the case one of grand larceny.

The case was sufficiently sustained by the evidence to render this question of intent a proper subject for the determination of the jury. And as this point is the only one upon which the propriety of the conviction has been assailed, and it was rightly disposed of on the trial, the judgment from which the appeal has been taken should be affirmed.

BRADY, J., and DAVIS, P. J., concur.

Upon appeal to the court of appeals, it was agreed to affirm the judgment upon the opinion of the General Term.

All concurred.